**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, solely as Trustee, <br><br><br> Plaintiff, <br><br> v. <br><br> TELOS CLO 2006-1 LTD.; TELOS CLO 2006-1, INC.; TELOS ASSET MANAGEMENT LLC; ELLINGTON CREDIT OPPORTUNITIES, LTD.; CEDE & CO. AS NOMINEE FOR THE DEPOSITORY TRUST COMPANY; GOLDMAN SACHS & CO.; HARE & CO.; LLC; KNOTFLOAT CO.; MAC & CO, LLC; TIPTREE OPERATING COMPANY LLC;  and JOHN DOES 1 THROUGH 100, <br><br> Defendants. | Case No. 16-cv-8963 |

**INTERPLEADER COMPLAINT**

The Bank of New York Mellon Trust Company, National Association ("BNYM"), solely in its capacity as Trustee (the "Trustee") under an Indenture (the "Indenture"), dated as of November 21, 2006, by and among Telos CLO 2006-1 Ltd., as Issuer (the "Issuer"), Telos CLO 2006-1, Inc., as Co-Issuer (the "Co-Issuer", and together with the Issuer, the "Co-Issuers") and the Trustee, for its Interpleader Complaint hereby alleges and states as follows:

**I.
NATURE OF ACTION**

1.      This is an interpleader action brought for the purpose of adjudicating the respective rights of the interpleader defendants with respect to certain assets held by the Trustee in connection with a CLO transaction.   The Trustee faces competing demands by certain

interpleader defendants with respect to such assets and wishes to obtain the direction of the Court as to the proper disposition of these assets.

2.       BNYM serves as Trustee under the Indenture.[1]

3.       Pursuant to the Indenture, the Co-Issuers issued the Class A-1R Notes, the Class A-1D Notes, the Class A-1T Notes, the Class A-2 Notes, the Class B Notes, the Class C Notes the Class D Notes, the Class E Notes (collectively, the "Secured Notes").  The Secured Notes have been paid in full and are no longer Outstanding.

4.       The Issuer also issued Subordinated Notes pursuant to the Subordinated Note Issuing and Paying Agency Agreement (the "Subordinated Note Agreement") dated as of November 21, 2006 between the Issuer and BNYM as subordinated note issuing and paying agent  (the "Issuing and Paying Agent").

5.       This dispute arises because Telos Asset Management LLC, the current Collateral Manager of the assets held by the Trustee in relation to the subject CLO transaction, directed the Trustee to pay it $2,362,097.49 as an Incentive Collateral Management Fee while Ellington Credit Opportunities, Ltd., a Subordinated Noteholder, through its affiliate Ellington Management Group LLC (collectively, "Ellington"), requested the Trustee to withhold that payment of the Incentive Collateral Management Fee.  The Trustee has no claim to any of the money at issue.

6.       After these two parties were unable to resolve their dispute, with notice, the Trustee commenced this interpleader action so that the Court can adjudicate the proper recipient of the $2,362,097.49.

7.       Accordingly, the Trustee now seeks to interplead the Disputed Funds, as defined below, and ultimately discharge itself from this action.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Indenture.

8.      The Trustee has no liability to any of the interpleader defendants, and the Trustee has no bias, preference or opinion as to which of the above demands, if any, are ultimately deemed proper by this Court.   Moreover, the Indenture provides a number of protections insulating the Trustee from liability.

## II.
## PARTIES

9.      BNYM is a national banking association with its principal place of business at 700 South Flower Street, Suite 200, Los Angeles, California 90017.

10.      Upon information and belief, Telos CLO 2006-1 Ltd. is an exempted company with limited liability incorporated under the laws of the Cayman Islands with its principal place of business in the Cayman Islands.

11.      Upon information and belief, Telos CLO 2006-1, Inc. is a Delaware corporation with its principal place of business in Newark, Delaware.

12.      Upon information and belief, Ellington Credit Opportunities, Ltd. is a Cayman Islands Limited Liability Exempted Company incorporated under the laws of the Cayman Islands and has its registered office in Georgetown, Grand Cayman.

13.      Upon information and belief, Telos Asset Management LLC is a corporation organized under the laws of Delaware with its principal place of business at 780 Third Avenue, 22nd Floor, New York, New York 10017.

14.      Upon information and belief, Goldman Sachs & Co. is a corporation organized under the laws of the State of Delaware with its principal place of business at 30 Hudson Street, Jersey City, New Jersey 07302.   Upon further information and belief, Goldman Sachs & Co. is also a physical holder of Subordinated Notes and may therefore have an interest in the Disputed Funds, as that term is defined below.

15.     Upon information and belief, Hare & Co. is the nominee name of The Bank of New York Mellon, a state bank organized under New York banking law with its principal place of business at One Wall Street, New York, NY 10286.  Upon further information and belief, Hare & Co. is also a physical holder of Subordinated Notes and may therefore have an interest in the Disputed Funds, as that term is defined below.

16.     Upon information and belief, Knotfloat Co. is owned by State Street Bank & Trust, and is a corporation organized under the laws of Massachusetts, with its principal place of business at One Lincoln Street, Boston, Massachusetts 02110.  Upon further information and belief, Knotfloat Co. is also a physical holder of Subordinated Notes and may therefore have an interest in the Disputed Funds, as that term is defined below.

17.     Upon information and belief, Mac & Co, LLC is a corporation organized under the laws of  Pennsylvania, with its principal place of business at 500 Ross Street, Pittsburgh, Pennsylvania 15262-0001.  Upon further information and belief, Mac & Co, LLC is also a physical holder of Subordinated Notes and may therefore have an interest in the Disputed Funds, as that term is defined below.

18.     Upon information and belief, Tiptree Operating Company LLC is a corporation organized under the laws of Delaware, with its principal place of business at 780 Third Avenue, 21st Floor, New York, New York 10017.  Upon further information and belief, Tiptree Operating Company LLC is also a physical holder of Subordinated Notes and may therefore have an interest in the Disputed Funds, as that term is defined below.

19.     Upon information and belief, Cede & Co. is the nominee name of the Depository Trust Company, a limited purpose trust company organized under New York banking law with its principal place of business at 55 Water Street, New York, NY 10041.   Upon further

information and belief, Cede & Co is the registered Noteholder of certain Subordinated Notes. As the registered Noteholder of certain Subordinated Notes, Cede & Co. may have an interest in the Disputed Funds, as that term is defined below.

20.     John Does 1 through 100 are sued in this action because, upon information and belief, they include the beneficial owners of certain Subordinated Notes held in the nominee name of Cede & Co. through the Depository Trust Company.  The Trustee is not aware of the identities of all the beneficial interest holders in the Subordinated Notes held by Cede & Co. John Does 1 through 100, as owners of beneficial interests in certain Subordinated Notes held by Cede & Co., may have an interest in the Disputed Funds, as that term is defined below.

### III.
### JURISDICTION AND VENUE

21.     Jurisdiction is appropriate under 28 U.S.C. § 1335 because this is a civil action of interpleader or in the nature of interpleader, two or more adverse interpleader defendants are of diverse citizenship and the amount in controversy exceeds $500.

22.     Pending resolution of this dispute, and subject to any order of this Court, the Trustee will not make a distribution of or otherwise dispose of the Disputed Funds, as that term is defined below.

23.     Additionally, this Court has jurisdiction over this action pursuant to 12 U.S.C. § 632, which provides for jurisdiction over suits involving international banking where at least one party to the suit is an entity organized under the laws of the United States and the suit arises out of a transaction involving international or foreign banking or financial operations.

24.     The Trustee is a national banking association organized under the laws of the United States.

25.     This suit arises out of transactions involving international banking in that it involves the Indenture, which is an agreement among the Issuer, a foreign corporation organized under the laws of the Cayman Islands, the Co-Issuer, and the Trustee.

26.     Venue is proper in this district because Section 14.10 of the Indenture, which gives rise to this action, provides for submission to venue in this district.

## IV.
## FACTUAL ALLEGATIONS

27.     On November 21, 2006, the Issuer entered into a Collateral Management Agreement (the "CM Agreement") with Tricadia Loan Management LLC (now known as Telos Asset Management LLC) ("Telos") governing the obligations and rights of the Collateral Manager.

28.     Under the Indenture and the CM Agreement, the Collateral Manager is entitled to receive certain fees known as the Senior Collateral Management Fee (the "Senior CM Fee"), the Subordinated Collateral Management Fee (the "Subordinated CM Fee") and the Incentive Collateral Management Fee (the "ICM Fee" and together with the Senior CM Fee and the Subordinated CM Fee, the "CM Fees") on Distribution Dates.

29.     The Indenture contains a series of payment priorities or "waterfalls" that guide the order of payment of distributions on each Distribution Date depending upon certain circumstances.

30.     The amount of the ICM Fee distributed is effected by which waterfall is applied for a given Distribution Date.

31.     At issue in this case is the choice between the "regular waterfall" set forth in Section 11.1(a)(i) of the Indenture and the "redemption waterfall" set forth in Section 11.2(a) of

the Indenture.  The latter waterfall is used in specified circumstances including at the time of a redemption of the Notes under the Indenture.

32.     Ultimately, the Collateral Manager would receive a larger ICM Fee in a distribution made under the regular waterfall set forth in Section 11.1(a)(i) than under the redemption waterfall set forth in Section 11.2(a).

33.     Ellington, as a holder of Subordinated Notes, may also be entitled to a distribution on any given Distribution Date.  The amount of  distributions to Subordinated Noteholders will be larger in situations where the ICM Fee is lower.

34.     Under the Indenture, January 11, April 11, July 11 and October 11 of each year are Distribution Dates.  Prior to the October 11, 2016 Distribution Date, a Note Valuation Report was prepared listing payments pursuant to the "regular" waterfall under Section 11(a) of the Indenture.  Under a distribution pursuant to the regular waterfall, the ICM Fee would be $2,362,097.49 on the October 11, 2016 Distribution Date.

35.     Before it had distributed the ICM Fee as calculated, on October 11, 2016 the Trustee received a request from Ellington not to distribute the ICM Fee to Telos.  In addition to objecting to the payment of the ICM Fee, Ellington also objected to the recent sales of Collateral.

36.     Telos responded with a mutually exclusive request to distribute the ICM Fee as calculated.

37.     On or about October 14, 2016, Telos sent counsel for the Trustee a letter requesting that BNYM "distribute the Incentive Collateral Management Fee due to Telos."  In an October 28, 2016 letter to BNYM from Telos' parent, Tiptree Financial ("Tiptree"), Tiptree clarified that the ICM Fee Telos sought was the full $2,362,097.49.  Telos also advised the

Trustee that its position was that the sales effected during the Due Period under the Indenture relating to the October 2016 Distribution Date were appropriate and permitted by the Indenture.

38.     On November 1, 2016, the Trustee sent a letter to both Telos and Ellington through their respective counsel, notifying them that the Trustee had reviewed the correspondence from both parties and that the Trustee may file an interpleader action if the parties did not come to an agreement on or before November 15, 2016.

39.     Pursuant to Ellington's request, on the October 11, 2016 Distribution Date, the Trustee held the $2,362,097.49 earmarked for the ICM Fee under Section 11.1(a) of the Indenture.  This amount, along with any future amounts earmarked for the ICM Fee under Section 11.1(a) or Section 11.2(a) of the Indenture, as applicable, are the Disputed Funds.

40.     As part of the dispute regarding which waterfall is applicable for distribution of the ICM Fee, Telos and Ellington disagree as to how the ICM Fee should be calculated under the redemption waterfall as set forth in Section 11.2(M) of the Indenture, if applicable.  The Trustee takes no position as to the interpretation of that Section 11.2.

41.     Upon information and belief, as of the date of this Interpleader Complaint, Ellington and Telos never came to an agreement and the Trustee commenced the instant interpleader action.

## V.
## INTERPLEADER REQUIREMENTS

42.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

43.     This brief statement of background facts makes it clear that the respective claims to the Disputed Funds currently in the Trustee's possession are adverse and conflicting and are

made without collusion.  The Trustee is unable to determine which, if any, of the claims are valid and/or in what amounts.

44.    The Trustee cannot make any payments or disbursements of the Disputed Funds to any party without this Court's determination of the respective interests in such funds.

45.    Because the Trustee lacks knowledge or information sufficient to determine the rights of any party to the Disputed Funds subject to this controversy, the Trustee contests the alleged rights of all parties asserting a claim to such Disputed Funds in its possession (or to be received following the date hereof).   Due to the amount at issue at present, which is $2,362,097.49, the Trustee is willing to place the entirety of the Disputed Funds in an interpleader escrow account (the "Interpleader Escrow") held by the Trustee, preserving such funds and reserving all rights and claims thereto, pending a determination by this Court of the controversy and the respective rights to such Disputed Funds.   Amounts deposited in such Interpleader Escrow will be invested in the same manner as other amounts held in the Payment Account unless otherwise ordered by the Court.  All investment income will be deposited into the Interpleader Escrow.

46.    The Trustee has no interest as a claimant in the Disputed Funds withheld and maintained on the basis of this interpleader except to the extent of reasonable Trustee's fees, attorneys' fees, costs, and disbursements with respect to this action and the maintenance and distribution of the funds as provided for in Section 6.8(a) of the Indenture and/or as otherwise awarded by the Court.

47.    Pursuant to Sections 6.1(c)(iv) and 6.8(a) of the Indenture, the costs of this interpleader action should not be incurred by the Trustee and instead may be assessed against any party to this litigation.  Accordingly, the Trustee should be permitted to pay for the costs of

this suit out of the Disputed Funds held in the Interpleader Escrow on a periodic basis, as approved by the Court.

## VI.
## CONCLUSION AND PRAYER

BASED UPON THE FOREGOING, the Trustee respectfully requests that the Court enter an order:  (1) directing the Trustee to deposit and maintain the Disputed Funds in an Interpleader Escrow held and segregated in the Payment Account under the Indenture and to invest such Disputed Funds in the same manner as other amounts held in the Payment Account or any similar fund unless ordered otherwise by the Court (with all investment income being deposited into such Interpleader Escrow) until the parties' respective rights to such Disputed Funds are determined by the Court; (2) directing the Trustee how to calculate the ICM Fee under the redemption waterfall in Section 11.2 of the Indenture, if the Court directs that the ICM Fee be paid under that section; (3) ordering the Trustee, pending resolution of this dispute, to continue on each Distribution Date (beginning on the next Distribution Date and each subsequent Distribution Date thereafter) to make payments of all amounts other than the Disputed Funds, which are placed into the Interpleader Escrow; (4) requiring all parties and all other individuals or entities claiming a right to the Disputed Funds to appear and assert their respective claims to the Disputed Funds, if any, and their respective rights, if any, as a consequence of this action under the Indenture; (5) enjoining all parties and all other interested persons from instituting or pursuing any proceedings in any court, federal or state, against the Trustee for the recovery of the Disputed Funds, on account of any party's purported claims or rights to such Disputed Funds, and/or on account of any party's purported rights arising as a consequence of this action under the Indenture; (6) directing the Trustee to distribute amounts in the Interpleader Escrow as directed by the Court upon final judgment determining the respective interests of the Defendants

and all other interested persons in the Disputed Funds; (7) permitting the Trustee to continue to pay its Trustee's fees, attorneys' fees, costs and expenses incurred in connection with the matters leading up to and relating to this action on a periodic basis; (8) releasing and discharging the Trustee from any and all liability to any party and any other interested persons and all those claiming through or acting with them, or claiming any interest, beneficial or legal, through such party or through others in the Disputed Funds and with respect to any consequences of this action under the Indenture, conditioned upon the Trustee's compliance with the future orders and judgment of the Court as described above, and (9) granting the Trustee such other and further relief, at law or in equity, to which it may show itself justly entitled.

Dated: November 17, 2016
     New York, New York

                                   Respectfully submitted,

                                   */s/  Casey B. Howard*
                                   Casey B. Howard (CH-4633)
                                   Joseph N. Froehlich (JF-5221)
                                   LOCKE LORD LLP
                                   200 Vesey Street
                                   New York, New York 10281
                                   choward@lockelord.com
                                   jfroehlich@lockelord.com
                                   Telephone:    212.415.8600
                                   Facsimile:    212.303.2754